**DGD REALTY ASSOCIATES, L.P. and Community Specialists Corporation**

v.

**Michael A. DELLA VECCHIA, Recorder of Deeds of the County of Allegheny, and The Borough of Baldwin.**

**The Borough of Baldwin, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1994.

Decided Feb. 6, 1995.

---

John R. Luke, for appellant.

Victor R. Delle Donne, for appellees.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

The Borough of Baldwin appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which denied post trial relief and, in essence, reaffirmed the trial court's order directing the Recorder of Deeds of Allegheny County to record a subdivision plan submitted by DGD Realty Associates, L.P. (DGD) and Community Specialists Corporation (Community Specialists). We reverse.

DGD owns approximately 683 acres of land, of which 677 are located in the City of Pittsburgh and 5½ acres are located in Baldwin Borough. The Pittsburgh City Planning Commission approved a subdivision plan dividing the property into two lots, a 635 acre lot completely in Pittsburgh and a 48 acre lot, mostly in Pittsburgh but also comprised of the 5½ acres in Baldwin.[1] However, the plan was neither submitted to nor approved by Baldwin. Because the subdivision plan did not show a signature of any Baldwin official or representative, the Allegheny County Recorder of Deeds, Michael A. Della Vecchia, refused to record the subdivision plan. DGD and Community Specialists filed a mandamus action seeking to compel recordation. Following a hearing, the trial court ordered the Recorder of Deeds to record the subdivision as approved by the Pittsburgh City Planning Commission. Baldwin, an intervenor in the action, filed post trial motions, which were denied, and this appeal followed.

---

1. The trial court used different acreage numbers because it believed that the 5½ acre Baldwin parcel was contiguous to a 48 acre parcel in the City of Pittsburgh. However, in reviewing the DGD Plan of Lots, (R.R. at 288a), we note that Lot # 1 contains a total of 48.084 acres of which 42.557 acres are in the City of Pittsburgh and 5.527 acres are in Baldwin. We have used these numbers from the Plan of Lots in our discussion. The difference in these numbers does not affect the result.

▮ The issue before us on appeal[2] is whether the trial court erred in ordering the Recorder of Deeds to record this subdivision plan. Mandamus is an extraordinary writ used to compel performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant and lack of any other appropriate and adequate remedy. *Atlantic Richfield Co. v. Della Vecchia,* 69 Pa.Commonwealth Ct. 235, 450 A.2d 792 (1982).

Here, the trial court, relying on section 513 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10513, and *King v. Perkasie Borough Zoning Hearing Board,* 122 Pa.Commonwealth Ct. 510, 552 A.2d 354 (1989), determined that the Recorder of Deeds was obliged to record the subdivision plan because DGD had obtained the approval of the Pittsburgh City Planning Commission, "the only municipal approval required by law." (Trial court op. at 3.) We disagree.

Section 501 of the MPC grants municipalities the power to regulate subdivision and land development within the municipality by enacting a subdivision and land development ordinance, as follows:

> The governing body of each municipality may regulate subdivisions and land development within the municipality by enacting a subdivision and land development ordinance. The ordinance shall require that *all subdivision* and land development *plats of land situated within the municipality shall be submitted for approval to the governing body . . . .*

53 P.S. § 10501 (emphasis added). Baldwin has enacted a subdivision ordinance requiring the owner of any land in the Borough to receive official approval for a subdivision of that land.[3] (R.R. at 349a.)

▮ With regard to recording of subdivision plats, section 513(a) of the MPC provides:

> (a) Upon approval of a final plat, the developer shall within 90 days of such final approval record such plat in the office of the recorder of deeds of the county in which the municipality is located. *Whenever such plat approval is required by a municipality, the recorder of deeds of the county shall not accept any plat for recording, unless such plat officially notes the approval of the governing body and review by the county planning agency, if one exists.*

53 P.S. § 10513(a) (emphasis added). Thus, absent a rule to the contrary, the Recorder of Deeds cannot accept this subdivision plat for recording without approval by Baldwin's governing body.

Relying on *King,* the trial court determined that the subdivision plan could be recorded without Baldwin's approval. (Trial court op. at 3.) However, because of significant differences between *King* and this case, we cannot agree.

First, *King* was not a mandamus action seeking to compel a Recorder of Deeds to record a subdivision plat and there was no discussion of section 513 of the MPC in *King.* Second, in *King,* unlike here, the portion of the property at issue was to "remain totally vacant." *Id.* at 515, 552 A.2d at 356. In *King,* the landowner owned approximately 15 acres of land, about 14 of which were located in the Borough of Perkasie. The remaining 1.5 acres, located in contiguous Hilltown

---

**2.** Our scope of review in a mandamus action is limited to determining whether the trial court abused its discretion or committed an error of law. *M & W Corporation v. Upper Chichester Twp.,* —— Pa.Commonwealth Ct. ——, 651 A.2d 630 (1994).

**3.** Section 107 of the MPC defines a subdivision as:

"Subdivision," *the division or redivision of a lot, tract or parcel of land* by any means *into two or more lots, tracts, parcels or other divisions of land* including changes in existing lot lines *for the purpose,* whether immediate or future, *of* lease, partition by the court for distribution to heirs or devisees, *transfer of ownership* or building or lot development: Provided, however, That the 'subdivision by lease of land for agricultural purposes into parcels or more than ten acres, not involving any new street or easement of access or any residential dwelling, shall be exempted.

53 P.S. § 10107 (emphasis added). Here, the purpose of the subdivision, which includes land situated in Baldwin, is apparently the transfer of ownership of a portion of the existing DGD property from DGD to Community Specialists. Hence, it fits within this definition.

Township, made up a triangular piece of land at the rear of the tract. The landowner did not submit its subdivision plan to Hilltown Township and a neighboring landowner objected, claiming that the plan should also have been submitted to Hilltown Township for approval. In rejecting the neighbor's argument, we noted that there was to be no construction or improvement of any road, building or structure on the Hilltown Township portion of the property, that the proposed subdivision did not involve the Hilltown portion of the tract and that the proposed subdivision would not affect Hilltown Township.[4]

Here, on the other hand, the Baldwin portion of the lot is not totally vacant, the subdivision does involve the Baldwin portion of the tract and Baldwin *is* affected. The plans show a 50 foot wide access and utility easement across the Baldwin portion of the property, as well as dedication of approximately 0.349 acres along Agnew Road in Baldwin for street purposes. (R.R. at 347a.) Furthermore, the sole access to the buildings, which are located on the city portion of the property, is obtained by way of a preexisting drive from Agnew Road in Baldwin across the Baldwin portion of the property. (Trial ct. op. at 2; R.R. at 347a.) At least one fire hydrant and three lighting fixtures are located along this access drive. (R.R. at 320a, 321a.) In addition, deliveries of food, mail, etc. as well as emergency services use this drive to access the property from Agnew Road in Baldwin, and Baldwin has been contacted for police services. (R.R. at 323a–325a.) Thus, this case is clearly distinguishable from *King*.

The requirements for grant of the extraordinary writ of mandamus do not exist here. Neither the MPC nor *King* establishes a clear legal right of DGD and Community Specialists to compel the Recorder of Deeds to record this subdivision plat absent official approval by Baldwin, nor do they establish a clear legal duty on the part of the Recorder of Deeds. To the contrary, it appears that the Recorder of Deeds has a duty

*not* to accept the plat for recording when the plat does not contain a notation showing approval by Baldwin's governing body. Thus, the trial court erred in issuing a writ of peremptory judgment in mandamus and ordering the Recorder of Deeds to record the subdivision.

Accordingly, we reverse.

## ORDER

AND NOW, this 6th day of February, 1995, the order of the Court of Common Pleas of Allegheny County dated December 16, 1993, is reversed.

---

4. We also noted that the neighbor's "property is not disturbed by the proposed subdivision. [Neighbor] is 'aggrieved' only in the sense that [the landowner] will not build a road up to [neighbor's] boundary line." *King,* 122 Pa.Commonwealth Ct. at 515, 552 A.2d at 356.